**KHAN v. LEO FEIST, Inc., et al.**
**No. 42, Docket 20694.**

Circuit Court of Appeals, Second Circuit.
Dec. 20, 1947.

AUGUSTUS N. HAND, Circuit Judge.

This is a suit to enjoin infringement of the copyright of the plaintiff Khan in the song "Rum and Coca-Cola," of which the following is the text:

"Rum and Coca-Cola

(By Invader)

Since the Yankees came to Trinidad
  They have the young girls going mad
The young girls say they treat them nice
  And they give them a better price
They buy rum and coca-cola
  Go down Point Cumana
Both mother and daughter
  Working for the Yankee dollar.

I had a little mopsy the other day
  Her mother came and took her away
Then her mother and her sisters
  Went in a car with some soldiers
They buy rum and coca-cola etc.

There are some aristos in Port-of-Spain
  I know them well, but I won't call names
In the day they wouldn't give you a right
  But you can see them with the foreigners
    late at night.

A couple got married one afternoon
  And was to go Mayaro on a honeymoon
The very night the wife went with a
    Yankee lad
  And the stupid husband went staring
    mad.

Inspector Jory did a good job
  At St. James he raid a recreation club
They was carrying on the club as a brothel
  The condition in which he found the girls
    I cannot tell."

The defendants' song contained the following stanzas which are practically identical with the first stanza of the plaintiff's song:

"Since the Yankee come to Trinidad
  They got the young girls all goin' mad
Young girls say they treat 'em nice
  Make Trinidad like Paradise."

"Drinkin' Rum and Coca Cola
  Go down 'Point Koomahnah'
Both Mother and Daughter
  Workin' for the Yankee Dollar."

The four lines last quoted were sung as a chorus in each song and in form and substance are almost identical.

See, also, Baron v. Leo Feist, Inc., 7 F.R.D. 71.

Julian T. Abeles, of New York City, for defendant-appellant Leo Feist, Inc.

L. Arnold Weissberger, of New York City, for defendant-appellant Paul Baron.

Edward E. Schwarz, of New York City (Israel Beckhardt, of New York City, of counsel), for defendant-appellant Morey Amsterdam.

Emil K. Ellis, of New York City (Emil K. Ellis, Abraham J. Heller, Myron A. Ellis, Jonas Ellis and Abraham Beital, all of New York City, of counsel), for plaintiff-appellee Mohamed H. Khan.

Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.

Judge Byers, before whom the suit was tried, found on substantial evidence that one Rupert Grant, a native of Trinidad, composed the lyrics and words of the song "Rum and Coca-Cola" during February 1943 and that on or about March 1, 1943 Grant assigned to the plaintiff in Trinidad the right to procure a copyright, who thereupon procured a copyright of a booklet containing the song entitled "Victory Calypsoes." Judge Byers also found that the plaintiff became the owner of the song and procured the copyright therefor in accordance with the provisions of the British Copyright Law of 1911, the particular clauses of which are set forth in the margin[1] and also in accordance with the provisions of the Ordinances of Trinidad, the pertinent clauses of which are similarly set forth.[2]

---

[1] "1.—(1) Subject to the provisions of this Act, copyright shall subsist throughout the parts of His Majesty's dominions to which this Act extends for the term hereinafter mentioned in every original literary dramatic musical and artistic work, if—

"(a) in the case of a published work, the work was first published within such parts of His Majesty's dominions as aforesaid; and

"(b) in the case of an unpublished work, the author was at the date of the making of the work a British subject or resident within such parts of His Majesty's dominions as aforesaid;

* * * * * * *

"(2) For the purposes of this Act, 'copyright' means the sole right to produce or reproduce the work or any substantial part thereof in any material form whatsoever, * * *

"(3) For the purposes of this Act, publication, in relation to any work, means the issue of copies of the work to the public, and does not include the performance in public of a dramatic or musical work, the delivery in public of a lecture, the exhibition in public of an artistic work, or the construction of an architectural work of art, but for the purposes of this provision, the issue of photographs and engravings of works of sculpture and architectural works of art shall not be deemed to be publication of such works.

* * * * * * *

"5.—(1) Subject to the provisions of this Act, the author of a work shall be the first owner of the copyright therein:

"Provided that—

* * * * * * *

"(2) The owner of the copyright in any work may assign the right, either wholly or partially, and either generally or subject to limitations to the United Kingdom or any self-governing dominion or other part of His Majesty's dominions to which this Act extends, and either for the whole term of the copyright or for any part thereof, and may grant any interest in the right by licence, but no such assignment or grant shall be valid unless it is in writing signed by the owner of the right in respect of which the assignment or grant is made, or by his duly authorized agent;

* * * * * * *

"27. The Legislature of any British possession to which this Act extends may modify or add to any of the provisions of this Act in its application to the possession, but, except so far as such modifications and additions relate to procedure and remedies, they shall apply only to works the authors whereof were, at the time of the making of the work, resident in the possession, and to works first published in the possession.

* * * * * * *

"31. No person shall be entitled to copyright or any similar right in any literary, dramatic, musical, or artistic work, whether published or unpublished, otherwise than under and in accordance with the provisions of this Act, or of any other statutory enactment for the time being in force, but nothing in this section shall be construed as abrogating any right of jurisdiction to restrain a breach of trust or confidence.

* * * * * * *"

[2] "1. This Ordinance may be cited as the Copyright Ordinance.

"2. In this Ordinance—

* * * * * * *

" 'infringing' when applied to a copy of a work in which copyright subsists, means any copy, including any colourable imitation, made or imported in contravention of the provisions of this Ordinance;

* * * * * * *

"3. Three printed or lithographed copies of the whole of every book, * * * which shall be printed or lithographed in the Colony, * * * shall, within one month after the day on which any such book shall first be delivered out of the press, and notwithstanding any agreement (if the book be published) between the printer and the publisher thereof, be delivered free of any charge, claim, or demand whatsoever by the printer, bound, sewed, or stitched together, and upon the best paper on which the same shall be printed or lithographed, to the Colonial Secretary. * * * The Colonial

The Judge also found that on or about May 1, 1945, the plaintiff as copyright owner procured from the Copyright Office of the United States a certificate for ad interim copyright of the booklet containing the song and that on or about June 29, 1945, the plaintiff obtained a United States copyright covering the booklet as originally copyrighted in Trinidad.

■ The Acting Colonial Secretary of Trinidad certified to receipt of three copies of the booklet "Victory Calypsoes" which had been produced in accordance with the requirements of Section 3 of the Trinidad Copyright Law. While it is argued on behalf of the defendants that under Section 3 of the Trinidad Ordinances these copies should have been delivered to the Colonial Secretary by the printers, we think that Judge Byers properly held in his opinion that the plaintiff had mailed the copies on behalf of the printers and that the latter could act through Khan as their agent in making the delivery.

The assignment of the song and of the right to copyright it made by Grant to Khan in Trinidad on or about March 1, 1943, was oral, but later Ellis reduced the assignment to writing, as appears in Plaintiff's Exhibit 17, which we set forth in the margin,[3] and Grant executed it.

■ The written assignment by Grant dated April 16, 1945, confirmed the plaintiff's proprietorship in the song that entitled him to the protection of the copyright laws of the United States.[4] Defendants contend that the assignment by Grant to the plaintiff was invalid because it was not made in

---

Secretary shall thereupon give a receipt in writing for the copies so received."

[3] "Know All Men By These Presents that I, Rupert Grant, of Port of Spain, Trinidad, have heretofore assigned and do, by these presents, assign to Mohamed Khan of Port of Spain, Trinidad, his heirs, executors, administrators and assigns, all my right, title and interest in and to the words and lyrics of a certain song created and written by me entitled 'Rum and Coca-Cola' including the right to apply for a copyright thereof in Trinidad, the United States of America and any other country in the world and complete and unrestricted rights of publication, private and public performances and mechanical and electrical reproductions or otherwise.

"The transfer of title to the said song and the rights herein granted are subject to the terms of an agreement defining the respective interests of the undersigned, Mohamed Khan, and others in the proceeds of a claim and suit to be brought for infringement of the copyright of the said song obtained by Mohamed Khan in Trinidad. This assignment is an affirmation of a previous oral assignment of said rights to Mohamed Khan but does not, in any way, change or affect the respective interests of the undersigned, Khan and others as expressed in writing in an agreement with Emil K. Ellis, Esq., attorney of 1270 Sixth Avenue, New York, N. Y.

"In Witness Whereof, I do hereby set my hand and seal this 16th day of April, 1945.

"(Signed) Rupert Grant

"Emil K. Ellis
Witness"

[4] Section 8 of the Act of March 4, 1909 governs United States copyrights taken out by alien authors or proprietors and reads as follows:

"§ 8. Authors or proprietors, entitled; aliens. The author or proprietor of any work made the subject of copyright by this title, or his executors, administrators, or assigns, shall have copyright for such work under the conditions and for the terms specified in this title. The copyright secured by this title shall extend to the work of an author or proprietor who is a citizen or subject of a foreign State or nation only:

"(a) When an alien author or proprietor shall be domiciled within the United States at the time of the first publication of his work; or

"(b) When the foreign State or nation of which such author or proprietor is a citizen or subject grants, either by treaty, convention, agreement, or law, to citizens of the United States the benefit of copyright on substantially the same basis as to its own citizens, or copyright protection, substantially equal to the protection secured to such foreign author under this title or by treaty; or when such foreign State or nation is a party to an international agreement which provides for reciprocity in the granting of copyright, by the terms of which agreement the United States may, at its pleasure, become a party thereto.

"The existence of the reciprocal conditions aforesaid shall be determined by the President of the United States, by proclamation made from time to time, as the purposes of this title may require." 17 U.S.C.A. § 8.

writing at the time of the oral agreement therefor. But the writing, like the memorandum of an oral agreement under the statute of frauds,[5] we regard as sufficient to satisfy the British Copyright Law by confirming the prior oral assignment.

In December 1944 the defendants obtained a United States copyright for their song "Rum and Coca-Cola" in the name of Amsterdam and later in the joint names of Amsterdam and the other individual defendants. Two of the stanzas of this song, as we have already said, were identical with those copyrighted in Trinidad by the plaintiff. Though the music for the defendants' lyrics was composed by Baron, the words and music of defendants' song were copyrighted as a whole. So far as Baron cooperated in the infringement of those lyrics which were identical with verses copyrighted by plaintiff, Baron was an infringer, as well as Amsterdam who furnished the lyrics, and Leo Feist, Inc., the publisher. The extent of Baron's liability as a contributor for any profits that have been realized through the infringement of plaintiff's verses will have to be determined on the accounting which has been ordered.

■ Defendants argue that the alleged infringing lyrics were not subject to copyright by Grant because they had become part of the public domain, but the trial judge found that Grant was the author upon the basis of what must be regarded as substantial evidence and we can discover no justification for reversing the finding.

Defendants further contend that the English Copyright Act and the applicable Trinidad Ordinances invalidated any assignment by Grant to Khan that was not in writing and executed at the time the latter received a conveyance of Grant's rights. As we have already said, the requirement of the Copyright Act that an assignment be in writing was satisfied by the written confirmation of the prior oral assignment by Grant to Khan.

The English decisions[6] on which the defendants rely are inapplicable to the case at bar and do not affect the rights of the plaintiff. We however have found no controlling decision invalidating an oral assignment which has been confirmed by a later writing.

Clementi v. Walker and Chappell v. Purday, supra, turned on the holding of the court that the copyright statute of Queen Anne did not extend protection to foreigners where there had been publication by third parties in England before the execution of a written assignment. In each case there had been publication abroad by a foreign author and importation into England prior to a later assignment in writing to the plaintiff. It was held that in such circumstances there was a dedication to the public which prevented subsequent copyright protection in England. It is to be remembered that these two decisions preceded the enactment of an international copyright law and dealt with the rights of Englishmen to copy foreign writings which had been published in England before any copyright had been perfected in that country.

In the Jude decision as assignment was not involved, but only a license. In Performing Right Society the question was whether an assignment of literary property to be acquired in the future transferred more than equitable rights to future copyrighted property and it was held that the legal title to such copyrighted property remained in the assignor. We think the decision has no bearing on the case before us. Nicol v. Barranger held that a plaintiff who had no title to a copyright at law or in equity at the time when he commenced his action could not secure relief in that action by means of a title subsequently acquired, but must discontinue and begin another suit after obtaining an assignment.

■ The defendants further attack the plaintiff's song and the suit to enforce his copyright because of its alleged immoral tendencies. It seems exaggerated to hold

---

[5] Williston on Contracts, Revised Ed., § 590.

[6] Clementi v. Walker, 2 Barnewall & Cresswell's Reports 861; Chappell v. Purday, 4 Younge & Collyer 485; In Re Jude's Musical Compositions [1907] 1 Ch.Div. 651; Performing Right Society, Ld. v. London Theatre of Varieties, Ld., Law Reports, Appeal Cases 1924, p. 1; Nicol v. Barranger, English Ch.Div., Court of Appeal [April 14, 1921], MacGillivray Copyright Cases (Eng.) 219.

that the rather cheap and vulgar verses would tend to promote lust. We hold that Judge Byers properly refused to grant a dismissal of the suit on such a ground.

The defense of laches in bringing suit also interposed is clearly without merit.

Judgment affirmed.