ADVERTISERS EXCHANGE Inc. v.
HINKLEY et al.

No. 6413.

United States District Court
W. D. Missouri, W. D.

Dec. 28, 1951.

W. Arnold Brannock, of Newbill Brannock, Buck & Gray, Kansas City, Mo., for plaintiff.

Delton L. Houtchens, of Clinton, Mo., Charles V. Garnett and Quinn & Peebles, all of Kansas City, Mo., for the defendant.

DUNCAN, District Judge.

Plaintiff, a corporation existing under the laws of the State of New York, instituted this suit against the defendant, a resident of Missouri, under the Copyright Laws, for an injunction to restrain the defendant from further infringing certain copyright books owned by the plaintiff, and for damages for such infringement.

Plaintiff is engaged in the syndicated advertising business in which it creates various advertisement series which are assembled and published in book form to be delivered to its subscribers each month, together with a sufficient number of mats to reproduce the advertisements in newspapers. Each subscriber signs a contract which authorizes him to use the copyright service for a certain period of time, generally one year, and thereafter until cancelled by either party to the contract. The contract provides that only one subscriber shall be served in each town.

On February 20, 1947 plaintiff entered into such an agreement [1] with the defend-

1. "Advertisers Exchange, Inc.
"381 Fourth Avenue    New York 16, N. Y.
Pony Service

me
"Please ship us F.O.B. New York monthly, beginning as soon as possible,

your Pony Service of advertisements prepared from your major monthly release for the Food business, consisting of copy, illustration and layouts for advertisements, as you think best; also

ant. Thereafter the plaintiff sent to the defendant 12 volumes of its copyright food service, together with the necessary mats to produce the advertisements shown in each volume. The amount of the contract price was remitted by the defendant to and including the month of February, 1948.

On March 11, 1948 plaintiff by registered letter cancelled the contract with defendant, giving as its reason for cancellation, that defendant had stated to plaintiff's sales agent that he did not wish to continue with the service after March 31, 1948. However, the plaintiff did bill defendant for the month of March, and defendant replied that because of the cancellation of the contract, he did not feel that he should be required to pay for this month, and the charge was cancelled, and defendant's account was closed by plaintiff.

In that letter plaintiff notified defendant to destroy all the material, cuts, etc., so that they would not fall into the hands of any person who did not have a right to use them. The defendant did not do this, but continued to publish the copyrighted advertisements through the month of December 1949, or to at least use certain portions of them in ads which he inserted in the local newspaper "The Clinton Eye." Plaintiff's copyrighted material was used in 29 such advertisements by defendant in this newspaper during this period of time. This publication enjoyed a circulation of 3261 copies.

In its original complaint, in addition to an injunction, plaintiff sought damages as follows: "6. That the defendant pay over

send all matrices necessary to duplicate said advertisements.

I

"We agree to pay you at New York at the rate of Three 00/100 ($3 00/100) weekly, total One Hundred & Fifty Six ($156.00/100) yearly, plus transportation

                    my

charges, in consideration for our right to use the above described copyrighted service in newspapers and other media of Clinton State of Missouri only.

"The term of this contract shall be for a period of One Year from date of first shipment.

"Said contract shall, after the One Year period, continue in effect, under the same terms and conditions as stated herein, until either party notifies the other by registered mail to discontinue. Payments for any additional period shall be made on the first of the month following date of shipment, and shall be at the rate of one-twelfth of the annual charge for the first year.

"Terms of payment Thirty-nine... 00/100 Dollars ($39.00) by check and Thirteen...00/100 Dollars .......

"Accepted at New York, N. Y.
By Advertisers Exchange, Inc.

"Per Lewis W. Rush

"Date Feb. 24, 1947

"Dated 20 Feb. 1947

($13.00) on the first day of each month, beginning May 1947 until the whole account has been paid.

"Fifteen days after failure to meet any of the payments due, the whole amount remaining unpaid becomes forthwith due and payable.

"The undersigned agrees to arrange for publication in newspapers and other media and pay the cost of same and that Advertisers Exchange, Inc. is in no way responsible for the cost or rate of publication.

"It is agreed that Advertisers Exchange, Inc. will not furnish this copyrighted service to anyone else for use in the above named territory while this contract remains in force and that I—we will not continue to use any of the materials supplied by Advertisers Exchange, Inc. after this contract has terminated. This agreement is subject to acceptance of Advertisers Exchange, Inc. at New York and is not subject to revocation or cancellation upon such acceptance.

"Neither party will be held responsible for any provisions or representations not embodied in writing herein.

"Name Hinkley Self Service Grocery

"By L. E. Hinkley
               (Official Title)

"Address 137 So. Washington

unto the complainant such damages as to this Court shall appear just and proper, within the provisions of the Act of Congress in such cases made provided, besides the costs and disbursements of this suit, and a reasonable counsel fee." However, during the trial the plaintiff disclosed that the measure of damages sought was based on paragraph (b), Second of § 101 of the act, 17 U.S.C.A. § 101 which reads as follows: "Second. In the case of any work enumerated in section 5 of this title, except a painting, statue, or sculpture, $1 for every infringing copy made or sold by or found in the possession of the infringer or his agents or employees". Thus, under this section plaintiff alleged that he was entitled to recover the sum of $1 for each infringing copy of said newspaper, and contends that its total recovery based on the circulation of the "Clinton Eye" multiplied by the 29 infringements should therefore be $94,569.

There is little dispute as to the facts, except as to the cancellation of the contract, which the defendant denies. Defendant admits that the volumes of advertising matter were copyrighted, as heretofore described, but denies that the matrices were a part of the copyrighted matter, and asserts his right to use them regardless of the advertising matter contained in the copyrighted books. He admits the use of the mats which produce certain of the material included in such copyrighted books. However, he denies that he used any substantial part of such material.

Each of the mats representing some particular cut depicted in the copyrighted book contained the words "Copr Advertisers Exchange, Inc." with the year inserted thereafter, in very very small letters, so small in fact, that it requires the use of a magnifying glass to determine what it is.

In view of the court's determination of the question, it is not important as it has been in some of the reported cases that the above quoted words were so small as to be illegible to the naked eye, particularly because of the fact that the books containing the cuts of which the mats were to be used for reproduction for advertising purposes clearly conveyed the notice that they were copyrighted. This, as I have heretofore stated, the defendant does not dispute.

■ First, I think there is no question but that the contract was cancelled, and it was so understood between the parties. The evidence shows that prior to the posting of the letter of March 11, 1948,[2] sent by

2. "Advertisers Exchange, Inc.
   Three-Eighty-One Fourth Avenue,
      New York, 16, N. Y.
      "March 11, 1948

"Registered Mail

"Mr. L. E. Hinkley
Hinkley Self Service Grocery
137 So. Washington
Clinton, Mo.

"Dear. Mr. Hinkley:

"Our representative advised us as a result of his recent call that you do not wish to continue with our service after March 31st, 1948. If it is your wish, cancellation can be accomplished at that time, and we have marked our records accordingly.

"As you know, there is a provision in our contract which requires that discontinuance can only be accomplished by registered mail prior to the expiration date. Since it is not always convenient for our customers to renew their contract at the time of expiration, this clause has proven helpful to both our clients and this company. In the absence of any written notification from you, we assumed that in accordance with the terms in our agreement, shipments were to be continued and billed at 1/12th the annual rate which in your case is $13.00 per month. Consequently, we extended Your exclusive franchise to March 31st, and billed you $13.00 for the material sent you. We shall appreciate your check for this amount which will enable us to close out your account.

"As a protection to our customers, all our material is copyrighted under Federal Copyright Laws and, therefore, can only be used by persons who have the exclusive franchise to our service. Upon expiration of your franchise, it is advisable that all the copyrighted material you have on hand be destroyed to prevent it from getting into the hands of persons not authorized to use it.

"We have enjoyed working with you during the past year, and hope that we may

plaintiff by registered mail and received by defendant on March 15, the defendant had advised the sales agent of the plaintiff that he did not desire to continue the service beyond the month of March, 1948. The information was communicated to the plaintiff by its agent, and in response to that communication, this letter was written.

Defendant now raises the issue that this letter was not sent within the period of a year, and that during the month of March the contract was in effect, and could not be cancelled until the end of the second year. If that fact stood alone, I would be inclined to agree with the defendant, but in addition to this letter of cancellation, the plaintiff billed the defendant for the month of March, and in response to that billing, the defendant protested that the contract had been cancelled, and that he should not be required to pay for that month. The bill was cancelled and no further material was sent to the defendant for the ensuing year. Apparently both parties treated the contract as having been cancelled, and it is my conclusion that the effect of this action of the parties was to cancel it.

Defendant also raises the issue that the material used by the defendant was not substantial, and that the rule of *de minimis non curat lex* should apply. Compared to the amount which had been sent to the defendant from which he might choose such as he desired to use, it is true the amount was small, but it was important, and I think a substantial part of the material was used by defendant over this period of approximately 20 months.

Defendant next contends that the mats were not a part of the copyrighted material, and that he was legally free to use such mats in any way, and at any time he desired. Without the mats the copyrighted material would have been of little or no value to this or any other subscriber. It consisted simply of mats and pictures designed to bring the subscriber's merchandise to the attention of the public, but to have the illustrations reproduced in comparatively small numbers would have been quite costly, whereas the plaintiff, through its large production capacity, produced these mats in great quantities at small cost. These matrices were as much a part of the copyrighted material as the cuts and pictures contained in the copyrighted books.

Because one might own the plates for the publication of a copyrighted book does not give that person the right to publish the book in violation of the rights of the owner. A case involving the same plaintiff was before the District Court in Pennsylvania. There the court said among other things: "The volumes from which the defendant's advertisements were taken were each copyrighted as books, and were properly marked. This being so, each cut in the volumes was protected." Advertisers Exchange, Inc., v. Laufe, D.C., 29 F.Supp. 1. In that case the question of the size of the print which gave the copyrighted notice upon the matrices was raised. The court there held the print, though small, was large enough to put a prudent person on inquiry. Further the alleged infringer was not a party to the contract and denied knowledge of the existence of the copyright, yet the court found infringement.

In the case before us, the defendant had full knowledge that the matter which he had purchased was fully covered by copyrights. I can come to no other conclusion except that the defendant reproduced the copyright with the knowledge that it was copyrighted, although he may have believed that he had a legal right to do so. However, the lack of intention to violate a copyright does not excuse one from the penalties of such a violation. Toksvig v. Bruce Pub. Co., 7 Cir., 181 F.2d 664, 666 and cases cited therein.

The next question—and the most serious one—is that of damages. Plaintiff did not prove any specific damages or loss of profits, but seeks to recover the sum of $1 for each infringing copy of the newspapers, which in this case runs into a ri-

again have the opportunity of serving you at some future date.

"Yours very truly,
"Advertisers Exchange, Inc.

/s/ T. G. Samotey
T. G. SAMOTEY

"tgs:hs
A–11456"

diculous amount, the defendant being the proprietor of a small grocery store. The only actual damages the plaintiff could possibly have suffered would be the loss of the sale of service to some other merchant in the community, which amounted to $156 a year, under the terms of the contract.

It would seem to me that it never was intended that the statute should apply in a case of this kind. Of course, if a book were published and thousands of volumes sold, there might be a profit lost to the owner of the copyright on every volume, but here the contract of the plaintiff is not based upon the amount of circulation, but upon a fixed annual amount for the material, regardless of whether the subscriber used it in a newspaper with 100 or 100,000 circulation.

Where there has been an infringement and no specific damages are proved, ordinarily the court would assess the minimum amount provided by § 101(b) Title 17 U.S.C.A. which provides that such damages can in no case exceed the sum of $5000 nor be less than the sum of $250, and shall not be regarded as a penalty.

However, the contract in this case provided that the material in the copyrighted books should be sold to but one subscriber in each town. So long as the defendant was using the material which had been supplied to him by the plaintiff, the plaintiff could not sell to any other subscriber. This condition existed for 20 months. It would seem clear therefore, that the amount of damages suffered by the plaintiff would be the amount of the sale price of such subscription, i. e., $156 for each year, or a total of $312. Judgment will be entered for the plaintiff in that amount.

■ So far as this court is advised, the defendant still possesses the material and the mats, although there is no evidence that any of it has been used since December 1949. The defendant should be and is enjoined from any further use of any part of the copyrighted material or mats accompanying same, or they should either be destroyed or delivered to the plaintiff.

If the parties desire further Findings of Fact and Conclusions of Law, they may be submitted.