309 F.2d 777
 Austris A. WIHTOL, doing business as Kalmin, Mohr & Apsit, and Austris A. Wihtol and Elly L. Wihtol, doing business as The Kama Co., Appellants,
v.
Nelson E. CROW, First Methodist Church of Clarinda, Iowa, and Clarinda, Iowa, School District, Appellees.
 No. 16963.
 United States Court of Appeals Eighth Circuit.
 November 27, 1962.
 Rehearing Denied January 5, 1963.
 
 Melville V. Nimmer, Los Angeles, Cal., for appellants.
 Richard G. Langdon and David W. Belin, Des Moines, Iowa, for appellee Clarinda, Iowa, School District.
 Richard G. Davidson, Clarinda, Iowa, William C. Hemphill, of Stipe, Davidson & Hemphill, Clarinda, Iowa, on the brief, for appellees Nelson E. Crow and First Methodist Church of Clarinda, Iowa.
 Before SANBORN and BLACKMUN, Circuit Judges, and REGISTER, District Judge.
 SANBORN, Circuit Judge.
 
 
 1
 The appellants were the plaintiffs in an action for injunctive relief and damages against the defendants (appellees) for the alleged infringement of copyrights covering a musical composition consisting of a song or hymn entitled "My God and I." From a judgment dismissing the complaint and awarding the defendants costs and attorneys' fees (199 F.Supp. 682), the plaintiffs have appealed.
 
 
 2
 The song in suit was composed by Austris A. Wihtol, who, under his trade name, obtained a copyright for the song ("English text and choral arrangement"). It was first published in the United States August 15, 1935, and duly registered in the United States Copyright Office on September 11, 1935. Wihtol later produced a version of the song "arranged for solo voice with new piano score, with new text added * *." This version was first published March 1, 1944, and registered in the Copyright Office on September 30, 1944, by Wihtol and his wife, doing business as The Kama Co.
 
 
 3
 According to the plaintiff Wihtol's evidence, the song has achieved a worldwide distribution, and has produced some $25,000 annually from royalties. It has been performed largely in churches and schools. Wihtol depends upon the income from the song for his support. Part of the income is derived from granting licenses for the making of special arrangements of the song.
 
 
 4
 The defendant Nelson E. Crow was the head of the Vocal Department of the Junior College and High School of the Clarinda, Iowa, School District, during the school year 1958-59. He has a Degree of Master of Music Education. He was employed by the School District and was paid a salary for his services in supervising its choral music activities. He selected what was to be sung by the choral groups of the School and supplied the members of such groups with printed copies of the music to be sung. Crow, during this same period, was also the Choir Director of the First Methodist Church of Clarinda, and its organist. He received compensation from it for his services. His duties as Director included the selecting of choral music for the choir and the furnishing of printed copies of the music to its members.
 
 
 5
 In November of 1958, Crow, without the permission of the plaintiffs, copied the song "My God and I," incorporating it in a new arrangement made by him. He had found the copyrighted version of the song as published and sold by the plaintiffs — of which the School had acquired some 25 copies — unsuitable for choir use. About 48 copies of his new arrangement, adapted for such use, were produced by him upon one of the School's duplicating machines. The new arrangement of the song was performed once by the High School choir of 84 voices at one of the regular monthly School chapel services, and was performed at church services on one Sunday by the much smaller choir of the First Methodist Church. Crow had furnished the choirs with copies of his new arrangement. The copies contained the words "arranged Nelson E. Crow," and made no reference to Wihtol.
 
 
 6
 In June of 1959, Crow wrote The Kama Co., advising of the new arrangement he had made of the song, and stating that he had "ad libbed a choral humming introduction of four measures" but otherwise had left the score in its original context and had omitted no part of the solo version. In his letter he suggested that The Kama Co. might be interested in his arrangement, and said: "* * * I will attempt to get the score ready for your perusal next fall — if you are interested." In response to his letter, The Kama Co. requested that copies of his arrangement of the song be forwarded for inspection. Receiving no reply to this request, Wihtol went to Clarinda, Iowa. Crow was not there. Wihtol discussed the matter of infringement with Mrs. Crow. Wihtol gathered the impression that there was to be no peaceful solution of the controversy, and returned to Los Angeles.
 
 
 7
 Under date of July 28, 1959, The Kama Co. wrote Crow as follows:
 
 
 8
 "Dear Mr. Crowe:
 
 
 9
 "We regret that you did not comply with our request of sending immediately a copy of your score for inspection. Not hearing from you, it was necessary to make investigation, thereby involving expense which could have been avoided and which also impairs the friendly and co-operative atmosphere that should exist between publishers and music users. The plain fact is that you are guilty of Copyright infringement and subject to assessments and penalties that the law imposes on infringers.
 
 
 10
 "For the preservation of good will for the sake of any future dealings that may come about, we will ask you to comply with the easiest terms possible.
 
 
 11
 "The copyright law permits us to ask a Statutory Fee, of not more than 5,000 dollars and not less than 250 dollars. For the present, we will be satisfied with the minimum of 250 dollars and will allow you 90 days from this date, for compliance.
 
 
 12
 "For the present, we will not institute a criminal complaint for Willful Infringement (maximum penalty — one year in jail and 1,000 dollar fine) because we wish to let you off as easily as possible.
 
 
 13
 "For the sake of a peaceful and pleasant settlement, please have all of the copies you made delivered to our office in California immediately. The copies are so made that other people can be involved too and very seriously.
 
 
 14
 "If this matter is amicably settled, in all likelihood, we may have an interesting offer for you for the future.
 
 
 15
 "Very truly yours,
 "THE KAMA CO.,
 "P. O. Box 301,
 "Glendale, Calif.,
 "/s/ L. ENGELHART."
 
 
 16
 On September 1, 1959, Crow forwarded to The Kama Co. 44 copies of the arrangement he had made of the copyrighted song, which were all the copies he had. The instant action was brought on January 15, 1960.
 
 
 17
 The defendants, in their separate answers to the complaint of the plaintiffs, denied any infringement of the copyrights in suit. The School District denied that Crow, in doing what he had done with the copyrighted song, was its agent and was acting within the scope of his authority as alleged in the complaint. It asserted that, if he was such an agent, the District was not liable for damages, since he was acting in a governmental capacity. The Church, in its answer, denied that the acts of Crow, complained of, were done as its agent.
 
 
 18
 The District Court, in disposing of this troublesome case growing out of the unfortunate but unintentional and seemingly harmless mistake of Nelson E. Crow, determined: (1) that there had been no infringement, but only a "fair use" by him of the copyrighted song; (2) that if there was infringement, it was of the 1935 copyright only, and not of both copyrights; (3) that the Clarinda, Iowa, School District could not, in any event, be held liable for infringement of the plaintiffs' copyrights; (4) that, because of the offensive intimation contained in the letter of July 28, 1959, from The Kama Co. to Crow that he was, or might be, subject to criminal prosecution, the defendants should each be awarded an attorney's fee of $500 against the plaintiffs. This Court is now called upon to review these rulings.
 
 
 19
 Section 1 of the Copyright Act, 17 U. S.C. § 1 et seq., gives to a copyright proprietor the "exclusive right":
 
 
 20
 "(a) To print, reprint, publish, copy, and vend the copyrighted work;
 
 
 21
 * * * * * *
 
 
 22
 "(e) To perform the copyrighted work publicly for profit if it be a musical composition; and for the purpose of public performance for profit, and for the purposes set forth in subsection (a) hereof, to make any arrangement or setting of it or of the melody of it in any system of notation or any form of record in which the thought of an author may be recorded and from which it may be read or reproduced: * * *."
 
 
 23
 Obviously the plaintiffs had the exclusive right to copy their copyrighted song, and obviously Nelson E. Crow had no right whatever to copy it. The fact that his copying was done without intent to infringe would be of no help to him,[1] as the trial court recognized, if the copying constituted an infringement.
 
 
 24
 The trial court, however, was of the opinion that innocent intent had a bearing on the question of fair use, and ruled that Crow did nothing more than make a fair, noninfringing use of the copyrighted song in suit.
 
 
 25
 Whatever may be the breadth of the doctrine of "fair use," it is not conceivable to us that the copying of all, or substantially all, of a copyrighted song can be held to be a "fair use" merely because the infringer had no intent to infringe. In Bradbury v. Columbia Broadcasting System, Inc., 9 Cir., 287 F.2d 478, the court, in considering the doctrine of "fair use" of a copyrighted production, said (page 485):
 
 
 26
 "To constitute an invasion of copyright it is not necessary that the whole of a work should be copied, nor even a large portion of it in form or substance, but that, if so much is taken that the value of the original is sensibly diminished, or the labors of the original author are substantially, to an injurious extent, appropriated by another, that is sufficient to constitute an infringement. The test of infringement is whether the work is recognizable by an ordinary observer as having been taken from the copyrighted source. Slight differences and variations will not serve as a defense. The means of expressing an idea is subject to copyright protection and where one uses his own method or way of expressing his idea, as Bradbury has done, such adornment constitutes a protectible work. Universal Pictures Co. v. Harold Lloyd Corporation, 9 Cir., 162 F.2d 354, 361, 363."
 
 
 27
 Compare Benny v. Loew's Incorporated, 9 Cir., 239 F.2d 532, 536; and note what the Seventh Circuit Court of Appeals held to be an infringement of Wihtol's song, in Wihtol v. Wells, 231 F.2d 550. It must be kept in mind that the applicable law is purely statutory and that the Copyright Act has little elasticity or flexibility.
 
 
 28
 The copying of the plaintiffs' song by Crow was, in our opinion, an infringement of the plaintiffs' copyrights in suit. The District Court thought only one of the copyrights was involved in the alleged infringement. The plaintiffs contend that both of their copyrights were infringed. If so, Crow would be liable for two infringements.
 
 
 29
 In L. A. Westermann Co. v. Dispatch Printing Co., 249 U.S. 100, 105, 39 S. Ct. 194, 195, 63 L.Ed. 499, the court said:
 
 
 30
 "* * * Each copyright is treated as a distinct entity, and the infringement of it as a distinct wrong to be redressed through the enforcement of this liability. Infringement of several copyrights is not put on the same level with infringement of one. On the contrary, the plain import of the statute is that this liability attaches in respect of each copyright that is infringed. Here six were infringed, each covering a different illustration. Thus there were at least six cases of infringement in the sense of the statute."
 
 
 31
 Crow's new arrangement of the song included the music and lyrics of the 1935 version as copyrighted. The arrangement also included the plaintiffs' 1944 copyrighted version, which contained changes in the music and an addition to the lyrics of the 1935 version. Under the Copyright Act, 17 U.S.C. § 7,[2] each version of the song is covered by a separate valid copyright.
 
 
 32
 From a practical standpoint, it would seem that Crow, who copied only one song, should be held liable for only one infringement. We have, however, reluctantly concluded that, under the language of the Copyright Act, his copying must be held to have infringed both of the copyrights of the plaintiffs.
 
 
 33
 Whether the School District can be subjected to liability for the copyright infringement by Crow is a debatable question. A suit against the State of Iowa, for the infringement of a copyright, clearly could not be maintained, because of the Eleventh Amendment to the Constitution of the United States, which reads:
 
 
 34
 "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."
 
 
 35
 In Ex parte In re State of New York, 256 U.S. 490, 497-500, 41 S.Ct. 588, 65 L.Ed. 1057, it was held that a state could not be sued without its consent, even in admiralty. The court said (page 500, 41 S.Ct. page 590):
 
 
 36
 "As to what is to be deemed a suit against a State, the early suggestion that the inhibition might be confined to those in which the State was a party to the record (Osborn v. United States Bank, 9 Wheat. 738, 846, 850, 857 [6 L.Ed. 204]) has long since been abandoned, and it is now established that the question is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceeding, as it appears from the entire record. Louisiana v. Jumel, 107 U.S. 711, 719, 720, 723, 727-728 [2 S.Ct. 128, 27 L.Ed. 448]; Hagood v. Southern, 117 U.S. 52, 67 [6 S.Ct. 608, 29 L.Ed. 805], et seq.; In re Ayers, 123 U.S. 443, 487-492 [8 S. Ct. 164, 31 L.Ed. 216]; Pennoyer v. McConnaughy, 140 U.S. 1, 10 [11 S.Ct. 699, 35 L.Ed. 363], et seq.; Smith v. Reeves, 178 U.S. 436, 438-440 [20 S.Ct. 919, 44 L.Ed. 1140]; Murray v. Wilson Distilling Co., 213 U.S. 151, 168-170 [29 S.Ct. 458, 53 L.Ed. 742]; Lankford v. Platte Iron Works Co., 235 U.S. 461, 469 [35 S. Ct. 173, 59 L.Ed. 316]."
 
 
 37
 The Clarinda School District is an instrumentality of the State of Iowa, constituting a part of its educational system and engaged in performing a state governmental function under state law and at state expense.[3] The plaintiffs are seeking to obtain a judgment against the School District for damages payable out of public funds. That, we think, they cannot do.[4] The trial court was, we think, without jurisdiction to entertain this action as against the School District.
 
 
 38
 On behalf of the First Methodist Church, it is argued that it cannot be held liable for the acts of Nelson E. Crow in copying the song in suit; that: "Although not proven either way it appears most probable that the Defendant Crow was an independent contractor. He was paid for his services periodically but furnished most of his own tools and materials." It seems to us that the only inference that reasonably can be drawn from the evidence is that in selecting and arranging the song in suit for use by the Church choir, Crow was engaged in the course and scope of his employment by the Church.
 
 
 39
 The allowance of $500 attorney's fees to each defendant was not justified, and of course would not have been made if the trial court had found infringement, since, under 17 U.S.C. § 116, attorney's fees may be allowed, in the discretion of the court, only to the prevailing party. The objectionable paragraph in the letter of The Kama Co. to Crow with respect to criminal prosecution for infringement, and the testimony of Wihtol, in his direct examination at the trial, relative to the circumstances under which his song was composed, which testimony the defendants assail as perjury, would not justify the judgment against the plaintiffs or the allowance of attorneys' fees to the defendants. The testimony was not perjury since it related to an immaterial matter, as the trial judge stated in his findings. Whatever may be thought of Wihtol, the song in suit is a copyrighted production, which the plaintiffs can protect and defend against all infringements, intentional or otherwise.
 
 
 40
 The discretion to award damages for copyright infringement is that of the trial court, not of this Court. In lieu of actual damages, the damages allowed may be such "as to the court shall appear to be just," but must be within statutory limits (17 U.S.C. § 101).[5] The discretion respecting allowance of attorney's fees to the prevailing party is also that of the trial court.
 
 
 41
 We hold: (1) that, under the evidence and the Copyright Act, Crow is an infringer of both of the copyrights in suit; (2) that the Church, as his employer, is jointly liable with him under the doctrine of respondeat superior; (3) that the School District is entitled to a dismissal, for want of jurisdiction, of the action as against it.
 
 
 42
 Damages, within the statutory limits, must be allowed by the trial court, which must also determine the question of whether any attorneys' fees shall be added to costs. While it seems highly improbable that, under the circumstances, there is the slightest danger of any of the defendants ever again copying or using the plaintiffs' song, the plaintiffs, no doubt, have the right to have their plea for an injunction considered and ruled upon by the trial court.
 
 
 43
 The judgment appealed from is reversed, and the case is remanded to the District Court for further proceedings not inconsistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Johns & Johns Printing Co. v. Paull-Pioneer Music Corporation, 8 Cir., 102 F. 2d 282, 283; Sheldon v. Metro-Goldwyn Pictures Corporation, 2 Cir., 81 F.2d 49, 54, certiorari denied, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392; Khan v. Leo Feist, Inc., D.C.S.D.N.Y., 70 F.Supp. 450, 459, affirmed C.C.A.2, 165 F.2d 188; Advertisers Exchange, Inc. v. Hinkley, W.D. Mo., 101 F.Supp. 801, 805, affirmed C.A. 8, 199 F.2d 313
 
 
 [2]
 "§ 7. Compilations or abridgements, adaptations, arrangements, dramatizations, translations, or other versions of works in the public domain or of copyrighted works when produced with the consent of the proprietor of the copyright in such works, or works republished with new matter, shall be regarded as new works subject to copyright under the provisions of this title; but the publication of any such new works shall not affect the force or validity of any subsisting copyright upon the matter employed or any part thereof, or be construed to imply an exclusive right to such use of the original works, or to secure or extend copyright in such original works."
 
 
 [3]
 Larsen v. Independent School Dist. of Kane Tp., Council Bluffs, 223 Iowa 691, 272 N.W. 632, 635-638; Ford v. Independent School Dist. of Shenandoah, 223 Iowa 795, 273 N.W. 870, 872
 
 
 [4]
 See and compare, O'Neill v. Early, 4 Cir., 208 F.2d 286, 288-289; De Levay v. Richmond County School Board, 4 Cir., 284 F.2d 340; Oklahoma Real Estate Commission v. National Business and Property Exchange, Inc., 10 Cir., 229 F. 2d 205, 206-207; Broward County, Fla. v. Wickman, 5 Cir., 195 F.2d 614; J. Ray McDermott & Co., Inc. v. Department of Highways, State of Louisiana, 5 Cir., 267 F.2d 317; Kraft Foods Co. v. Walther Dairy Products (D.C.W.D. Wis.), 118 F.Supp. 1, 24
 
 
 [5]
 L. A. Westermann Co. v. Dispatch Printing Co., 249 U.S. 100, 106-107, 39 S.Ct. 194, 63 L.Ed. 499; Jewell-LaSalle Realty Co. v. Buck, 283 U.S. 202, 51 S.Ct. 407, 75 L.Ed. 978; and the cases cited in Edwin H. Morris & Company, Inc. v. Burton (D.C.E.D.La.), 201 F.Supp. 36, at page 39