**MILLS MUSIC, INC., Plaintiff-Appellee,**

v.

**STATE OF ARIZONA and Arizona Coliseum and Exposition Center Board, a Body Politic under and by virtue of the State of Arizona, Defendants-Appellants.**

No. 75–3630.

United States Court of Appeals, Ninth Circuit.

Feb. 26, 1979.

**1280**

Fred W. Stork, III, Phoenix, Ariz., for defendants-appellants.

Samuel J. Sutton, Cahill, Sutton & Thomas, Phoenix, Ariz., for plaintiff-appellee.

Before HUFSTEDLER and GOODWIN, Circuit Judges, and LUCAS,* District Judge.

LUCAS, District Judge:

The State of Arizona and the Arizona Coliseum and Exposition Center Board ("Coliseum Board") appeal from a joint judgment awarding the plaintiff, Mills Music, Inc. ("Mills"), $75,000 in damages for willful copyright infringement and $25,000 in attorney's fees. Appellants' sole contention on appeal is that the Eleventh Amendment precludes an award of damages and attorney's fees against a state and one of its political agencies.

## I.

### FACTS

Mills brought suit in federal court on June 14, 1973 charging Arizona and the Coliseum Board with deliberate infringement of Mills' copyrighted musical composition, "Happiness Is." Mills alleged that the Coliseum Board, the agency of the state government charged with operating the state fair, had used its song as the theme and for the promotion of the 1971 Arizona State Fair. In addition to copyright infringement, Mills charged unfair competition.

Arizona and the Coliseum Board filed a motion to dismiss predicated upon Section 1(e) of the Copyright Act, 17 U.S.C. 1(e),[1] which provides that a person who performs a musical composition, but does not do so publicly and for profit, is not liable. This motion was denied, and defendants filed an Answer admitting the jurisdictional allegations of the Complaint.[2] At no time in the pretrial or trial proceedings did defendants raise their Eleventh Amendment defense.

---

* Honorable Malcolm M. Lucas, United States District Judge, Central District of California, sitting by designation.

1. Section 1(e) provides:
"Any person entitled thereto, upon complying with the provisions of this title, shall have the exclusive right:

.  .  .  .  .

(e) *To perform the copyrighted work publicly for profit if it be a musical composition*; .  . and for the purpose of public performance for profit, and for the purposes set forth in subsection (a) hereof, to make any arrangement or setting of it or of the melody of it in any system of notation or any form of record in which the thought of an author may be recorded and from which it may be read or produced.  .  .  . "
17 U.S.C. § 1(e) (Emphasis added.)

Although the Copyright Act was revised in its entirety by Public Law 94–553, October 19, 1976, which became effective on January 1, 1978, this action is governed as with "[a]ll causes of action that arose under title 17 before January 1, 1978, .  .  . by title 17 as it existed when the cause of action arose." Section 112 of Pub.Law 94–553, 90 Stat. 2600.

2. In their Answer, defendants admitted the jurisdictional allegation found in plaintiff's Complaint, which reads:
"1. This action arises under the Copyright Laws of the United States, including Title 17, United States Code, sections 101 through 116. Jurisdiction is conferred upon this Court by Title 28, United States Code, sections 1338 and 1400(a)."
This admission of jurisdiction was also made in the Pretrial Order.

At the close of trial, the Court found for the plaintiff. The Court determined that defendants' infringing activities were "willful, with full notice and knowledge of plaintiff's copyrights and in total disregard for those rights." *Conclusions of Law* ¶ 53. Further, the Court found that the defendants made numerous unauthorized arrangements, ultimately selected a favored arrangement, and then made 64 taped recordings of this arrangement. These tapes were used to broadcast a total of 3,928 performances of the unauthorized arrangement on both radio and television.

The Court also specifically rejected defendants' argument that the 1971 Arizona State Fair had not been conducted for a profit, *Findings of Fact*, ¶¶ 37–48, finding that "the 1971 Arizona State Fair was a commercial activity which directly competed with other similar forms of entertainment." *Findings of Fact*, ¶ 48. Accordingly, the Court rejected defendants' argument, based upon a Section 1(e) defense, that the fair had not been conducted for a profit. The Court's decision can be best summarized by its own words:

> "The defendants' taking of plaintiff's rights was total; every right contemplated by the Copyright Statute, except perhaps the right to print and the right to vend were infringed with impunity." ·

*Conclusion of Law,* ¶ 42.

■ Defendants raised their Eleventh Amendment defense for the first time in a motion to amend the Findings of Fact and Conclusions of Law. After this motion was denied, defendants appealed to this Court from the judgment of the trial court.[3]

## II.

## ELEVENTH AMENDMENT IMMUNITY

■ Recently, in *Riggle v. California,* 577 F.2d 579 (9th Cir. 1978), this Court briefly recounted the origins of the Eleventh Amendment.[4] There we noted:

> "During and after the ratification process of the United States Constitution, the states feared that federal constitutional authority might be construed to allow citizens of another state or foreign states to bring suits against the states in federal court. *See Edelman v. Jordan,* 415 U.S. 651, 660–662, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *New Hampshire v. Louisiana,* 108 U.S. 76, 86–88, 2 S.Ct. 176, 27 L.Ed. 656 (1883). When these fears were realized in *Chisholm v. Georgia,* 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793), the states quickly reacted with ratification of the Eleventh Amendment, which provides:
>
> > The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

577 F.2d at 581.

The principle of sovereign immunity embodied in the Eleventh Amendment, *see Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), has been judicially construed to extend to a "suit by private parties [against public officials] seeking to impose a liability which must be paid from public funds in the state treasury . . ." *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974); *see also Hutto v. Finney,* 437 U.S. 678, 98 S.Ct.

---

**3.** Mills suggests that this case is not within this Court's appellate jurisdiction because defendants are appealing from the denial of their post-trial motion to amend the Findings of Fact and Conclusions of Law, and because they have not specified in the notice of appeal the disputed Findings of Fact and Conclusions of Law. Both objections miscarry. Appellants have appealed from the judgment of the district court, which is clearly a "final decision" within the meaning of Section 1291, 28 U.S.C. § 1291. Moreover, there is no requirement that appel-

lant designate the particular Findings of Fact and Conclusions of Law from which it appeals. Accordingly, we have jurisdiction over this appeal.

**4.** The history of the Eleventh Amendment is set forth in considerable detail in *Edelman v. Jordan,* 415 U.S. 651, 660–664, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *see also, Employees v. Department of Public Health & Welfare,* 411 U.S. 279, 290–97, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) (Justice Marshall, concurring).

2565, 57 L.Ed.2d 522 (1978). The Supreme Court has held that the Eleventh Amendment applies to monetary awards against states whether based upon their wrongful withholding of welfare benefits, *Edelman v. Jordan, supra,* upon statutory provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), *Employees v. Department of Public Health & Welfare of Missouri,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); or upon implied rights of action in tort for breaches of federal statutory duties. *Riggle v. California, supra; But cf. Hutto v. Finney, supra,* 98 S.Ct. at 2576–79 (permitting award of attorneys fees against states as part of congressionally defined costs).

As this action was prosecuted both against the State of Arizona and a political entity of the state, Mills' action is clearly barred unless the State and the Coliseum Board have waived their Eleventh Amendment immunity or consented to jurisdiction.[5]

### III.

### CONSENT TO JURISDICTION

Mills argues that Arizona and the Coliseum Board consented to the exercise of federal court jurisdiction by admitting jurisdiction in their Answer and by failing to interpose the Eleventh Amendment defense until after trial. *See Gunter v. Atlantic Coast Line R. Co.,* 200 U.S. 273, 26 S.Ct. 252, 50 L.Ed. 477 (1906); *Clark v. Barnard,* 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1883).

■ Although a state may waive its Eleventh Amendment immunity, *State of Missouri v. Fiske,* 290 U.S. 18, 54 S.Ct. 18, 78 L.Ed. 145 (1933); *Skokomish Indian Tribe v. France,* 269 F.2d 555, 560 (9th Cir. 1959), such a waiver is not to be lightly inferred. *Jacobson v. Tahoe Regional Planning Agency,* 566 F.2d 1353, 1361 (9th Cir. 1977). In *Edelman v. Jordan, supra,* the Supreme Court recently considered the effect of failing to raise the Eleventh Amendment in a timely fashion. There, the Eleventh Amendment defense was first raised in the Court of Appeals after an award of judgment against the state in the district court. Despite the failure to raise the defense earlier, the Court of Appeals treated the defense on the merits. The Supreme Court commented:

"We approve of this resolution, since it has been well settled since the decision in *Ford Motor Co. v. Department of Treasury, supra* [323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389], that the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court."

415 U.S. at 677–78, 94 S.Ct. at 1363.

■ In light of *Edelman,* we feel constrained to hold that Arizona and the Coliseum Board did not waive their Eleventh Amendment defense by failing to interpose this defense until after trial and entry of judgment. Furthermore, in light of the fact that such a waiver is not to be lightly inferred, we hold that defendants have not waived their Eleventh Amendment defense by admitting the jurisdiction of the district court in their Answer. Absent some mention of the Eleventh Amendment in their admission of jurisdiction, defendants did not relinquish their Eleventh Amendment defense.[6]

---

**5.** The terms "waiver" and "consent to suit in federal court" appear to be used interchangeably in the cases.

**6.** Mills argues that "where a state voluntarily becomes a party to a cause, and submits its rights for judicial determination, . . . [the state] cannot escape the result of its own voluntary act by invoking the prohibitions of the 11th Amendment." *See Gunter v. Atlantic Coast Line R. Co.,* 200 U.S. 273, 284, 26 S.Ct. 252, 256, 50 L.Ed. 477 (1905) *citing Clark v.*

*Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 27 L.Ed. 780 (1883). Although applying this rule so that the failure to interpose the defense would result in a waiver appears preferable, the Supreme Court's holding in *Edelman* mandates that *Gunter, Clark,* and the other case cited by Mills for this proposition, *Petty v. Tennessee-Missouri Bridge Comm'sn,* 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1950), be read as holding that a state does not "voluntarily become a party" and "submit its rights for

## IV.

## WAIVER

In addition to arguing that Arizona and the Coliseum Board consented to jurisdiction by failing to raise in a timely fashion their Eleventh Amendment objection, Mills also argues that defendants waived their objection through their voluntary participation in an activity regulated by federal law, *see, e. g., Parden v. Terminal Ry. of Alabama State Docks Dept.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); and through constitutional subordination of sovereignty. *See, e. g., Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

In a series of recent cases, the Supreme Court has probed the nature and extent of a state's waiver of its Eleventh Amendment immunity. In *Parden v. Terminal Ry., supra,* the Supreme Court held that Alabama had waived its Eleventh Amendment immunity by operating a railroad in interstate commerce after the enactment of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51, 60. In finding waiver, the Court relied upon the statute's provision for a suit against a class of defendants which included the states as operators of railroads.

Nine years after *Parden,* the Supreme Court refused to apply that decision to subject a state to suit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on grounds that Congress had not expressly done so and "would not be presumed to take such action silently." *Employees v. Department of Public Health & Welfare of Missouri,* 411 U.S. 279, 284–5, 93 S.Ct. 1614, 1618, 36 L.Ed.2d 251 (1973). The Court continued:

"It is not easy to infer that Congress in legislating pursuant to the Commerce Clause, which has grown to vast proportions in its applications, desired silently to deprive the States of an immunity they have long enjoyed under another part of the Constitution."

411 U.S. at 285, 93 S.Ct. at 1618. The "sharp contrast" between *Parden* and *Employees,* recognized by this Court in *Riggle v. State of California, supra,* 577 F.2d at 583, was somewhat clarified in *Edelman v. Jordan, supra.*

At issue in *Edelman* was whether a state waived its Eleventh Amendment immunity by participating in federal programs under the Social Security Act, 42 U.S.C. §§ 1381–1385. The Court held that in the absence of congressional authorization to sue a class of defendants including the state and without any indication of a remedy available against a state, Illinois had not waived its Eleventh Amendment immunity. The Court in *Edelman* concluded:

"In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, [29 S.Ct. 458, 464, 53 L.Ed. 742] (1909)."

415 U.S. at 673, 94 S.Ct. at 1360. Thus, the *Parden-Employees-Edelman* trilogy establishes that the Eleventh Amendment immunity is waived when Congress has authorized suit against a class of defendants that includes states, and the state enters into the activity regulated by federal law.

Congressional enactments pursuant to the grant of authority under section 5 of the Fourteenth Amendment are subject to different considerations. *Hutto v. Finney, supra,* 98 S.Ct. at 2578 n. 31; *Fitzpatrick v. Bitzer, supra.* At issue in *Fitzpatrick* was the constitutionality of Title VII's provisions authorizing federal courts to award damages against employer states. After noting that Congress had included states in the class of defendants under the statute—a requirement found in *Parden* but missing in *Employees* and *Edelman*—the Court proceeded to analyze the relationship of the Eleventh and Fourteenth Amend-

judicial determination" merely by appearing in an action, defending upon the merits, and failing to interpose the Eleventh Amendment offense.

ments. The Court held that the Fourteenth Amendment expressly limited the authority of states, and shifted the federal-state balance by expanding Congress' power and correspondingly diminishing state sovereignty. 427 U.S. at 455, 96 S.Ct. [2666] at 2671. Thus, the Court concluded:

> "When Congress acts pursuant to § 5, not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional amendment whose other sections by their own terms embody limitations on state authority. We think that Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts. [Footnote omitted] *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945)."

427 U.S. at 456, 96 S.Ct. at 2671.

▪ In this case, we are presented with the question of the relationship between the Eleventh Amendment and the Copyright Act of 1909 ("Copyright Act"), 35 Stat. 1075, as amended, 17 U.S.C. § 1 *et seq.*, enacted by Congress pursuant to the Copyright and Patent Clause of the Constitution, Article 1, § 8, Cl. 8. Following the analysis set forth in the preceding cases, we begin by considering whether Congress has authorized suit against a class of defendants which includes states.

In enacting the Copyright Act, Congress has authorized a civil suit for infringement of the exclusive rights of the copyright holder. The Act provides:

> "If *any person* shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable:

> .        .        .        .        .

> (b) Damages and profits; amounts; other remedies.—To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement    .    . . ."

17 U.S.C. § 101 (Emphasis supplied).

Although neither the parties nor the Court has located any cases determining whether a state is included in the definition of "any person [who] shall infringe," we believe that the reasonable construction of this provision includes states within the defined class.[7] The Court reaches this conclusion by examining the language of the

---

7. The term "any person" is common in other federal statutes, and has occasionally been analyzed to determine whether states are to be included within it. For example, "any person" as used in the Securities Exchange Act of 1934, 15 U.S.C. § 78j, has been held not to include states in some cases, *Green v. Utah*, 539 F.2d 1266 (10th Cir. 1976); *Yeomans v. Kentucky*, 514 F.2d 993 (6th Cir. 1975), *cert. denied*, 423 U.S. 983, 96 S.Ct. 404, 46 L.Ed.2d 309; *Brown v. Kentucky*, 513 F.2d 333 (6th Cir. 1975), *cert. denied*, 423 U.S. 839, 96 S.Ct. 70, 46 L.Ed.2d 59, but has been held to include states in another. *Forman v. Community Services, Inc.*, 500 F.2d 1246 (2d Cir. 1974), *rev'd on other grounds*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) (the Supreme Court specifically reserved the issue, 421 U.S. at 846 n.11, 95 S.Ct. 2051). The differences in these cases may be attributable to the extent in which the state participated in the regulated area. *Green v. Utah, supra*, 539 F.2d at 1273.

In *Hutto v. Finney, supra*, Justice Brennan, concurring, was of the opinion that 42 U.S.C. § 1983, which defines a class of defendants with the term "any person," was intended by Congress to include states. He reached this conclusion by pointing to the relatively low standard of expression of congressional intent required in statutes enacted pursuant to section 5 of the Fourteenth Amendment, as well as to the original definition of "any person", which included a corporate or politic body.

The Court finds these cases relevant to ascertaining the intent of Congress, because they enumerate factors for determining whether states are to be included within a class of defendants, but we do not find them controlling as to the interpretation of the statute now under consideration. The class of defendants intended by Congress must be ascertained from the language of the statute, the legislative history of the statute, and the context in which it applies.

statute in the context of the activity regulated.[8]

The language of the statute is sweeping and without apparent limitation, suggesting that Congress intended to include states within the class of defendants. *Parden v. Terminal Ry., supra*, 377 U.S. at 187, 84 S.Ct. 1207. The section in question is part of a comprehensive and detailed Act regulating copyrights. Even the United States is liable for the infringement of a copyright, 28 U.S.C. § 1498(b); to hold that Congress did not intend to include states within the class of defendants would lead to an anomalous construction of the statute at best.

Strict construction of congressional intent has been adopted when Congress has acted pursuant to the commerce clause, U.S. Const. Art. I, § 8, cl. 3, and where the potential fiscal burden on states would be enormous. *Employees v. Department of Public Health & Welfare, supra*, 411 U.S. at 284–5, 93 S.Ct. 1614; *see also Hutto v. Finney, supra*, 98 S.Ct. at 2577 n.27. If Congress has acted pursuant to an expansive constitutional grant of authority such as the commerce clause, and the consequent burden on state treasuries will be significant, an intent to include states within the class of defendants should not be lightly inferred. But if the rationale for the rule of strict construction does not obtain, a less specific showing of congressional intent should suffice. Here, Congress has acted pursuant to the Copyright and Patent Clause to regulate the commercial disposition of a certain property right. As noted below, the Copyright and Patent Clause is a specific grant of constitutional power that contains inherent limitations on state sovereignty. In addition, the fiscal burden on state finances will be minimal, if only because states will infrequently engage in the ownership or infringement of a copyright. We conclude that the sweeping language used by Congress, acting pursuant to the Copyright and Patent Clause, is sufficient

indication of the intent to include states within the class of defendants.

■ As noted, we believe it is clear that the abrogation of a state's Eleventh Amendment immunity is inherent in the Copyright and Patent Clause and the Copyright Act. Congress is specifically empowered under the Constitution:

" . . . To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

U.S.Const. Art. I, § 8, cl. 8. Acting pursuant to this grant, Congress has enacted a broad and detailed statute with a plenary system of federal remedies to protect copyrights. *See, e. g.*, 17 U.S.C. §§ 101, 104, 116.

■ Although states may provide for additional protections for federal copyrights, a state may neither abrogate nor in any way diminish the federally granted and protected rights of a copyright holder. *Goldstein v. California*, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973). In *Goldstein*, the issue before the Court was federal pre-emption of the copyright field. In upholding a state criminal statute over a pre-emption objection, the Court noted:

"[T]he States cannot exercise a sovereign power which, under the Constitution, *they have relinquished to the Federal Government for its exclusive exercise.*"

412 U.S. at 552, 93 S.Ct. at 2307. (Emphasis supplied). The Court then proceeded to describe the effect of the states' partial relinquishment, thusly:

"When Congress grants an exclusive right or monopoly, its effects are pervasive; *no citizen or State may escape its reach.*"

412 U.S. at 560, 93 S.Ct. at 2312. (Emphasis supplied). *See also, Sears, Roebuck &*

---

**8.** The legislative history of a federal statute may also be relevant to determining Congress' intent. *Hutto v. Finney, supra*, 98 S.Ct. at 2578 n.31; *Parden v. Terminal Ry. of Alabama State Docks Dept., supra*, 377 U.S. at 190 n.8, 84

S.Ct. 1207. The legislative history of the pertinent provisions of the Copyright Act of 1909 is brief and without reference to the definition of "any person." *See, e. g.*, 43 Cong.Rec. 3701–5, 3744–47, 3761–68, 3831–32 (1909).

*Co. v. Stiffel Co.*[9], 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964).

Similarly, a state may not, consistent with the Constitution, infringe the federally protected rights of the copyright holder, and thereafter avoid the federal system of statutory protections. The "exclusive Rights" of an author, guaranteed under the Constitution and Copyright Act, would surely be illusory were a state permitted to appropriate with impunity the rights of lawful copyright holder. Accordingly, we conclude that the Eleventh Amendment's sovereign immunity does not permit a state to nullify the rights reserved and protected by Congress, acting pursuant to the Copyright and Patent Clause.

■ Finally, we note that the state's participation in the federally regulated activity is akin to "the dramatic circumstances of the *Parden* case, which involved a rather isolated state activity . . . ." *Employees v. Department of Public Health & Welfare, supra*, 411 U.S. at 285, 93 S.Ct. at 1618. The state voluntarily engaged in what is essentially a commercial activity. Its participation occurred well after federal legislation regulated the activity. The state has not shown, nor do we find upon independent examination, that the award in this case was so large as to interfere with the state's budgeting process. *Hutto v. Finney, supra*, 98 S.Ct. at 2574 n.18.

Our holding is contrary to *Wihtol v. Crow*, 309 F.2d 777 (8th Cir. 1962), which held that, by virtue of the Eleventh Amendment, a school district was immune from suit for copyright infringement. We do not find *Wihtol*, which was decided prior to *Parden, supra*, and its progeny, persuasive, and decline to follow it. We do note that our decision today is consistent with *Lemelson v. Ampex Corp.*, 372 F.Supp. 708 (N.D. Ill.1974), in which the court concluded that a patent infringement action for damages is not barred by the provisions of the Eleventh Amendment. *But see, Hercules, Inc. v. Minnesota State Highway Dept., supra.*

■ Having concluded that the award of damages for infringement of Mills' copyright does not contravene the Eleventh Amendment, we must consider whether the award of attorney's fees is likewise permissible. The district court awarded Mills attorney's fees based upon Section 116 of the Copyright Act which provides:

"In all actions, suits, or proceedings under this title . . . full costs shall be allowed, and the court may award to the prevailing party a reasonable attorney's fees as part of the costs."

17 U.S.C. § 116. Recently, in *Hutto v. Finney, supra,* the Supreme Court held that the Eleventh Amendment did not bar an award of attorney's fees based upon the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. The Court conclud-

---

**9.** In *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), the Supreme Court stated:

"Before the Constitution was adopted, some states had granted patents either by special act or by general statute, [footnote omitted] when the Constitution was adopted provision for a federal patent law was made one of the enumerated powers of Congress because, as Madison put it in The Federalist No. 43, the States 'cannot separately make effectual provision' for either patents or copyrights [citing The Federalist (Cooke ed. 1961) 228] That constitutional provision is Art. I, § 8, cl. 8, which empowers Congress 'To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.' Pursuant to this constitutional authority, Congress in 1790 enacted the first federal patent and copyright law, 1 Stat. 109, and ever since that time has fixed the conditions upon which patents and copyrights shall be granted, see 17 U.S.C. §§ 1–216; 35 U.S.C. §§ 1–293. These laws, like other laws of the United States enacted pursuant to constitutional authority, are the supreme law of the land. See *Sperry v. Florida*, 373 U.S. 379, [83 S.Ct. 1322, 10 L.Ed.2d 428] (1953). When state law touches upon the area of these federal statutes, it is 'familiar doctrine' that the federal policy 'may not be set at naught, or its benefits denied' by the state law. *Sola Elec. Co. v. Jefferson Elec. Co.*, 317 U.S. 172, 173, 176 [63 S.Ct. 172, 173, 87 L.Ed. 185] (1942). This is true, of course, even if the state law is enacted in the exercise of otherwise undoubted state power."

376 U.S. 225, 228–229, 84 S.Ct. 784, 787, 11 L.Ed.2d 661.

ed, *inter alia*, that Congress intended to permit attorney's fees against the states, that the Eleventh Amendment does not bar an award of costs against a state, and that Congress may amend the definition of taxable costs so as to include attorney's fees. In light of our determination respecting the subordination of the Eleventh Amendment to the Copyright and Patent Clause, and the Copyright Act's provision for attorney's fees as part of taxable costs, we conclude that the Eleventh Amendment does not bar the award of attorney's fees. *Hutto v. Finney, supra.*

Accordingly, we have concluded that the judgment of the district court must be affirmed. Plaintiff's counsel has requested additional attorney's fees for work in connection with this appeal. The Court has determined that an additional award of $3,500 is appropriate, and hereby awards that amount as taxable costs.

AFFIRMED.