Joan F. LANE d/b/a Lane & Co., Plaintiff,

v.

The FIRST NATIONAL BANK OF BOSTON, et al, Defendants.

Civ. A. No. 85–0520–H.

United States District Court, D. Massachusetts.

May 19, 1988.

**12**

William F. Spallina, Newton, Mass., for plaintiff.

Judith Fabricant, Asst. Atty. Gen. and John M. Skenyon, Fish & Richardson, Boston, Mass., for defendants.

MEMORANDUM AND ORDER

HARRINGTON, District Judge.

## I. PROCEDURE

These motions arise from a case in which plaintiff, Joan Lane, charges the First National Bank of Boston ("Bank") and the Commonwealth of Massachusetts ("Commonwealth") with, *inter alia*, violations of the Copyright Act, 17 U.S.C. §§ 101, *et seq.* In April of 1985, plaintiff amended her complaint to add claims against the Bank for misappropriation of trade secrets, and against the Commonwealth for civil rights violations, and injunctive relief. In June, 1985, plaintiff added as defendants the Department of Revenue ("the Department"), the Bureau of Accounts and three individuals who are employed by the Commonwealth.

On January 2, 1986, Judge Tauro granted the state defendants' motion to dismiss civil rights and pendent trade secrets claims, but denied the motion as to the copyright claim. The Commonwealth filed a motion for summary judgment, based in part on the ground that the copyright claim was barred by the Eleventh Amendment. Judge Tauro denied this motion orally during a pretrial conference. State defendants now seek reconsideration of their motion to dismiss, pursuant to Fed.R.Civ.P. 12(h)(3). based on Eleventh Amendment immunity.[1]

---

1. The Commonwealth also submitted a motion for Amendment of the Court's Order and For Certification Pursuant to 28 U.S.C. § 1292(b), which requires no action by the Court, in light of this decision. In addition, these defendants assented to and joined the Bank's motion for a separate trial, which is denied.

## II. STATEMENT OF THE CASE

Lane collects public financial information, compiles data bases, and sells computerized compilations to the public in various forms, including reports, computer tapes, and telephone lined access tie-ins to said computerized data bases. Sometime in October, 1981, Lane sold a tape of financial information taken from the Massachusetts Schedule A form. This is a Massachusetts form which every city and town must complete and submit annually to the state. Town accountants customarily add handwritten information to existing categories of Schedule A, to describe the flow of revenues and expenditures. This information is commonly referred to as "adds"; and Lane included this information from Schedule A forms in her compilations. Lane created this data base, known as "Schedule A", which contained all public financial information from Commonwealth cities and towns.

Lane contends that the Bank published a printout from the Schedule A data base of 1980 information, and without her authorization, delivered the printout to Harvey Beth, then Chief of the Bureau of Accounts at the Department of Revenue. Lane claims that the state defendants infringed on her copyright in the printout of the data base by incorporating "similar expressions of ideas regarding various entries for revenues and expenditures"; and by infringing upon the "arrangements and descriptions of the entries regarding revenues and expenditures as devised and created by the plaintiff and employed by her in Format 3".

Lane revised the Schedule A data into a more consistent format and created a work entitled "Format 3, Sources and Uses", which she published in a booklet. The booklet explained the Schedule A format and it contained financial information from the towns and cities, on a standardized form developed by her. Sometime after the booklet was published in December, 1982, Lane gave Harvey Beth a copy.

Lane claims the defendants infringed on her copyright in Format 3 by incorporating "similar expressions of ideas regarding various entries for revenue and expendi-

tures, and by infringing upon the arrangements and descriptions of the entries regarding revenues and expenditures" in the revised Schedule A, its accounting system and its Schedule A data base. Lane further alleges the Commonwealth devised a computer program and a Schedule A substantially similar to hers, based on infringement of her copyrighted works.

## III. RECONSIDERATION

■ The court first acknowledges its deference to Magistrate Alexander and Judge Tauro who previously denied defendants' motion to dismiss and their motion for summary judgment, based on Eleventh Amendment immunity from suit. The general rule is that one federal district judge should not overrule or reconsider a decision or order of another federal district judge in the same case unless there are good reasons to do so. *See Brady v. Transworld Airlines, Inc.*, 167 F.Supp. 469 (D.Del. 1958), *aff'd*. 401 F.2d 87 (3d Cir.1968) (court permitted reargument of matters decided by a retired judge to examine the impact of a recent Supreme Court decision on the issues in the instant case). Annotation, *Propriety of Federal District Judge's Overruling or Reconsidering Decision or Order Previously Made in the Same Case By Another District Judge*, 20 A.L.R.Fed. 13, 22 (1974).

In this case, the 1985 Supreme Court decision of *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171, *reh'g. denied*, 473 U.S. 926, 106 S.Ct. 18, 87 L.Ed.2d 696 (1985), and the very recent First Circuit decision of *WJM, Inc. v. Massachusetts Department of Public Welfare*, 840 F.2d 996 (1st Cir.1988), were not considered by the Court in the defendants' previous motions. This Court grants reconsideration of defendants' motion to dismiss, pursuant to Fed.R.Civ.P. 12(h)(3), on the grounds that these cases, in addition to others discussed below, demonstrate that the Eleventh Amendment bars plaintiff's action for copyright infringement against the Commonwealth, the Department of Revenue, the Bureau of Ac-

counts, and the three nominal defendants in their official capacities.

## IV. ELEVENTH AMENDMENT

Eleventh Amendment[2] immunity from suit in federal court is a jurisdictional bar to an action. *See Welch v. State Department of Highways & Public Transportation,* — U.S. —, 107 S.Ct. 2941, 2947, n. 6, 97 L.Ed.2d 389 (1987), (quoting *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). *Mills Music v. Arizona,* 591 F.2d 1278 (9th Cir.1979), is the leading appellate decision which directly addresses whether the Eleventh Amendment is a jurisdictional bar to a suit against the state, under the Copyright statute. That case, which was decided before *Atascadero* and *WJM,* held that the Eleventh Amendment was not a bar to such a suit, 591 F.2d at 1284–85, and it was the basis on which this motion was denied previously. Examination of the effect of the Eleventh Amendment upon suits against states for copyright infringement, based on the *Atascadero* decision, however, reveals that *Mills Music* is no longer controlling law.

*Atascadero State Hospital v. Scanlon* is a 1985 five to four decision by the Supreme Court, which addressed the Eleventh Amendment in a lengthy opinion and a strong dissent. It held that when Congress abrogates Eleventh Amendment immunity, it "must express its intention ... in unmistakable language in the statute itself." 473 U.S. at 243, 105 S.Ct. at 3148.[3] *Atascadero* held that the words "any recipient" were insufficient to subject the State of California to suit under section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The Court held that Congress could not abrogate the State of California's immunity from suit in federal court, for violations of section 504 of the Rehabilitation Act, de-

spite the undisputed fact that California was a recipient of such funds. *Id.* at 245–46, 105 S.Ct. at 3149–50.

Cases in the Ninth Circuit after *Atascadero* acknowledge its importance, and the Court of Appeals which decided *Mills Music* has referred to the impact of *Atascadero* upon the interpretation of statutory language. See *Doe by Gonzales v. Maher,* 793 F.2d 1470, 1493 (9th Cir.1986), *judgment aff'd. as modified, sub nom. Honig v. Doe,* — U.S. —, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). District courts which have considered the effect of *Atascadero* upon the *Mills Music* decision agree that *Mills Music* is no longer good law. *See BV Engineering v. University of California Los Angeles,* 657 F.Supp. 1246, 1249 (C.D. Cal.1987), *appeal pending; Woelffer v. Happy States of America,* 626 F.Supp. 499, 505, n. 9 (E.D.Ill.1985); *Mihalek Corp. v. State of Michigan,* 595 F.Supp. 903 (E.D. Mich.1984) (appealed on other grounds), 814 F.2d 290 (6th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 503, 98 L.Ed.2d 502 (1987), *reh'g. denied,* — U.S. —, 108 S.Ct. 1065, 98 L.Ed.2d 1027 (1988).

■ Within our own circuit, the Court of Appeals has also specifically questioned the effect of *Atascadero* upon *Mills Music.* There is some doubt whether *Mills Music* is good law, however, as it was decided prior to *Atascadero,* where the Supreme Court ruled that a congressional intention to abolish the States' immunity must be expressed in clear, unequivocal language. *WJM, Inc. v. Massachusetts Dept. of Public Welfare,* 840 F.2d 996, 1002, n. 7 (1988). Applying the logic of *Atascadero* to the Copyright Act, this Court rules that the words "anyone who violates any of the exclusive rights of the copyright owner", 17 U.S.C. § 501, are insufficient to include the Commonwealth. These words fail to

---

**2.** The Eleventh Amendment states that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

**3.** The Supreme Court has not yet clarified whether Congress' power to abrogate the states' Eleventh Amendment immunity extends to leg-

islation other than that which enforces the Fourteenth Amendment. See *WJM,* 840 F.2d at 1001–1002. Following the Supreme Court in *County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 252, 105 S.Ct. 1245, 1260–61, 84 L.Ed. 2d 169 (1985), this Court assumes, without deciding, that Congressional authority to subject states to suit in federal court is not confined to section 5 of the Fourteenth Amendment.

provide unmistakable language required by *Atascadero,* which is sufficient to abrogate Eleventh Amendment immunity.

The Eleventh Amendment confers immunity from suit upon state officials when "the state is the real substantial party in interest," that is, when "the judgment sought would expend itself on the public treasury ..., or interfere with the public administration...." *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 101–02, n. 11, 104 S.Ct. 900, 908 n. 11, 79 L.Ed.2d 67 (1984) (*Pennhurst II*), (quoting *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963)). *See also, Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985). The Eleventh Amendment is no defense to a charge against an official in his personal capacity, however. *Id.* An award of damages against an official in his personal capacity can be executed only against the official's personal assets. 473 U.S. at 166, 105 S.Ct. at 3105–06. Therefore, the three individual defendants do not receive Eleventh Amendment immunity from charges against them in their personal capacities.

When sued in one's personal capacity, an official may be entitled to assert personal immunity defenses, such as objectively reasonable reliance on existing law, to avoid liability. *Kentucky v. Graham,* 473 U.S. at 167, 105 S.Ct. at 3106 (citations omitted). The three individual defendants have raised such a defense in the form of a motion for summary judgment, based on qualified immunity.

## V. QUALIFIED IMMUNITY

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Borucki v. Ryan,* 827 F.2d 836, 837 (1st Cir.1987) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted)). The meaning of "clearly established law" in the context of qualified immunity

has been analyzed by the First Circuit in several cases, and in a recent decision the Court stated that, "in assessing a claim of qualified immunity, it is not sufficient for a court to ascertain in a general sense that the alleged right existed, otherwise '[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Borucki,* 827 F.2d at 838 (quoting *Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)); *Davis v. Scherer,* 468 U.S. 183, 195, 104 S.Ct. 3012, 3019–20, 82 L.Ed.2d 139 (1984) *reh'g. denied,* 468 U.S. 1226, 105 S.Ct. 26, 82 L.Ed.2d 919 (1984). "Accordingly, a court must determine whether an alleged right was established with sufficient particularity that a reasonable official could anticipate his actions would violate that right". *Id.*

While an official has a presumptive knowledge of constitutional standards, he or she is not expected to determine the manner in which the law's grey areas will be clarified and defined. *Id.* (Citations omitted). Based upon these principles, the *Borucki* court determined that a district attorney's dissemination to the press of a suspect's psychiatric history did not violate a clearly established right to privacy, and the court held that the district attorney was entitled to qualified immunity. The court noted there was a split in the circuits as to whether the right to privacy included a general right of nondisclosure applicable to personal records. *Borucki,* 827 F.2d at 848. Given this split, the court concluded that the right was not clearly established when the prosecutor made his disclosure. *Id.*

Similarly, the First Circuit noted that government officials cannot be expected to predict the future course of law, but they will not be shielded from liability if they act with disregard of clearly established rights. *DeAbadia v. Izquierdo Mora,* 792 F.2d 1187, 1191 (1st Cir.1986). As these general principles are applied to the facts of the instant case, defendants argue that they remain protected by qualified immunity be-

cause the laws of copyrightability of compilations, as applied to documents such as Lane's, were not clearly established at the time the defendants allegedly violated the plaintiff's rights.

■ In considering whether there is qualified immunity, the inquiry focuses not on the defendants' actions, but on the right allegedly violated. For example, in *Bonitz v. Fair*, 804 F.2d 164 (1st Cir.1986), the Court of Appeals concluded that *"Harlow* represented a deliberate shift in focus *away* from an individual defendant's conduct ... to the narrow issue of the right at stake, so that the immunity decision could be made by referring solely to the plaintiff's allegations." *Id.* at 167. (emphasis in original). As this is the standard for qualified immunity, this Court will accept

> "at face value the facts as presented by one party and limiting the immunity inquiry to the clarity of the right violated. Although limiting the immunity inquiry to the allegations and to the clarity of the alleged right may mean that fewer officials are entitled to interlocutory appellate review ..., this approach represents the balance struck by the Supreme Court [in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)] in resolving a complicated problem."

> *Id.* at 167–68.

Lane's allegations against the Commonwealth are that the Commonwealth infringed upon her arrangement and expression of ideas, as expressed in the printout of the data base and in Format 3. See *supra* p. 13.

Relying upon these allegations, the Court must consider whether Lane's rights under copyright law were sufficiently particularized as to data base compilations, so as to be copyrightable under clearly established

law in 1981, the time of the alleged infringement. *See Boruki v. Ryan*, 827 F.2d at 838, and cases cited.

Protection of one's copyright is established constitutionally,[4] and one's right to enforce copyright protection for compilations is protected specifically by statute, 17 U.S.C. § 103(a).[5] Copyright protection is a right unlike the right to privacy described in *Borucki*. The right to privacy is a penumbra of the Constitution, the application of which has been debated extensively in each new case. In contrast, the law of copyright protection is clearly established by statute and caselaw.

Facts themselves are in the public domain, available to all, and thus are not copyrightable, but compilations of facts may receive protection. 17 U.S.C. § 103(a). Compilations have been copyrightable in this district since 1845. *Emerson v. Davies*, 8 F.Cas. 615 (D.Mass.1845) (arithmetic texts in which arrangement is original is copyrightable despite limited expression of subject matter). According to several sources, directories, indexes, maps, telephone books, guide books and computer databases are copyrightable as compilations of facts. *See Current Developments in Copyright Law 1986*, Practising Law Institute, 1986, at 507. *See also*, Nimmer, *Nimmer On Copyright* § 2.04[B] at 2–41–42. ("Although some may question whether catalogs, directories and the like should be regarded as works of authorship subject to copyright protection, such protection has long been recognized ..."); Patry, *Latman's Copyright Law*, (6th Ed. 1986) at 62–64. Furthermore, compilation copyright can apply to computer programs and data bases. *Id.* at 62. *See also*, Denicola, *Copyright in Collections of Facts: A The-*

---

4. U.S. Const. Art. I, § 8, cl. 8.
"To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

5. Although Lane claims that Format 3 is not a compilation, her description of Format 3 complies with the definition of compilation under the statute, 17 U.S.C. § 101. 17 U.S.C. § 101

states that, "A 'compilation' is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term 'compilation' includes collective works." Therefore, this Court has treated Format 3 as a compilation.

*ory For The Protection of Nonfiction Literary Works*, 81 Colum.L.R. 516, 531 (1981) ("data bases are, in essence, automated compilations ...").

Defendants assert that there is a split in authority regarding the exact interest which is protected in compilations, and on that basis argues that the confusion protects their qualified immunity. The division of authority is based on two lines of cases, one of which looks to the labor and effort expended by the compiler as the basis of copyrightability ("sweat of the brow" theory). *See Jeweler's Circular Pub. Co. v. Keystone Pub. Co.*, 281 F. 83 (2d Cir.), *cert. denied*, 259 U.S. 581, 42 S.Ct. 464, 66 L.Ed. 1074 (1922).

In contrast to the "sweat of the brow" theory, there is another line of cases which looks to the selection and arrangement of preexisting data in compilations as indicia of copyrightability. *See Current Developments in Copyright Law 1986, supra*, at 507–08, and cases cited. Therefore, despite the existence of two theories regarding the basis for compilation copyright, the fact that data base compilations are copyrightable has not been disputed. Furthermore, for purposes of this case, Lane has identified the interest which she seeks to protect, i.e. the arrangement and expression of the data. Based on the *Bonitz* and *Borucki* standards, and accepting the plaintiff's allegations as true that the defendants have infringed upon her copyright based on the arrangement and expression of her data, the Court need examine only whether it is clearly established in 1981 that data base compilations were copyrightable, based on the arrangement and expression of data. The "sweat of the brow" theory is irrelevant here, and need not be considered.[6]

■ At the time Lane alleges the defendants infringed her works, compilations based upon arrangement of preexisting data were clearly established to be copyrightable. *See* Nimmer, *supra*, at

§ 2.04[B] at 2–41 to 2–42, n. 16, and cases cited. *Denicola*, within the scope of copyright; ... "the approach most frequently employed finds protectible expression in the arrangement of data appearing in the compilation").

Thus, where plaintiff alleges that what defendants copied was her expression and arrangement of the data, that is the portion of a compilation which has been established to be copyrightable. Lane alleges that she compiled this collection of data from each town's Schedule A, including their accountant's notations, or "adds." Accepting Lane's allegations as true, she identified and collected all the data submitted individually by town accountants, and compiled them in an independent way as expressed in her data base, her "Schedule A" form, and Format 3 book. The Court rules that plaintiff has met the requirement of copyrightability in compilations, based on arrangement, for purposes of this motion based upon qualified immunity. What she has done is analogous to compiling a directory, where the information, all public, existed before, but which had not been arranged in one place, making it an independently useful document. As in the case of directories, there is value in collecting this financial information because it gathers ordinarily unconnected data and organizes it in a manner easily communicated to the interested reader. Gorman, *Copyright Protection for the Collection and Representation of Facts*, 76 Harv.L.R. 1569, 1584 (1963). The financial information as it existed before Lane arranged it in one data base was an unorganized and useless collection of notations which the state had been attempting unsuccessfully to organize for years. As such, Lane's work was clearly copyrightable under existing law in 1981, based on her arrangement.

For these reasons, I deny defendants' motion for summary judgment on the basis of qualified immunity, as to the individual defendants in their personal capacities, but

---

**6.** According to some commentators, the "sweat of the brow" line of authority has become discredited as a basis of copyrightability. Patry at 64, n. 214; Nimmer at § 2.04[c], n. 16. Lane's complaint does not allege that the amount of her effort in compiling the data was a basis for her copyright. She has relied upon the arrangement theory, which has been clearly established as a basis for copyright in compilations.

grant the defendants' motion to dismiss the Commonwealth, the Department of Revenue, the Bureau of Accounts, and the three nominal defendants in their official capacities, on the basis of Eleventh Amendment immunity.

SO ORDERED.