Lane T. MELE, Petitioner,

v.

FITCHBURG DISTRICT COURT, WORCESTER COUNTY, and Worcester County Sheriff John M. Flynn, Respondents.

Civ. A. No. 88–1538–XX.

United States District Court, D. Massachusetts.

Sept. 30, 1988.

Robert A. Falk, Owens & Associates, Boston, Mass., for petitioner.

Marc Laredo, Atty. General's Office, Boston, Mass., for respondents.

MEMORANDUM OF DECISION

YOUNG, District Judge.

The Court's opinion in this matter was delivered orally from the bench on July 15, 1988, the Court reserving the right, should further proceedings ensue, to file a written opinion. This is that opinion.

## I. BACKGROUND

As this is the second time this petition for habeas corpus has been before the Court, it is appropriate to limn in some detail its previous—and undisputed—procedural history in state and federal courts.

In 1982, the petitioner, Lane T. Mele ("Mele"), was involved in an automobile accident in which a teenager was killed. On March 9, 1983, Mele came before a justice ("the first trial justice") in the Gardner District Court[1] and admitted to sufficient facts to warrant a finding of guilty with respect to four offenses: speeding, failure to stay within marked lanes, operating to endanger, and motor vehicle homicide. The first trial justice sentenced Mele to a two-year term in a house of correction. This sentence was suspended and Mele was placed on probation for two years. As a condition of probation, Mele was ordered to perform one hundred hours of community service.

More than a year later Mele filed a motion for a new trial before a jury and, when that motion was denied, appealed to the Massachusetts Appeals Court. In a rescript opinion,[2] that court explained that it was constrained to reverse because the first trial justice "did not conduct a colloquy to determine whether [Mele's] admission to sufficient facts and his waiver of jury trial were knowing and voluntary." *Commonwealth v. Mele*, 20 Mass.App.Ct. 958, 958, 480 N.E.2d 647 (1985). The case was ordered retried in a jury-of-six session in the Massachusetts District Court. *Id.* at 960, 480 N.E.2d 647. Both parties agree that a second trial justice—not the justice who had previously made a finding of

guilty and sentenced Mele and whose judgment had been reversed—presided over Mele's *de novo* trial in the jury-of-six session of the Fitchburg District Court. The jury convicted Mele of the same four counts of which he had been convicted previously. The second trial justice dismissed all the counts except motor vehicle homicide at the time of sentencing. On that count, he sentenced Mele to two and one-half years in a house of correction, twenty days to be served, and the remainder suspended. Mele also received two and one-half years probation. The second trial justice credited Mele with the full service of his previous probation and suspended sentence which he had completed. Mele appealed his second sentence to the Massachusetts Appeals Court, which affirmed it. *Commonwealth v. Mele*, 24 Mass.App.Ct. 1101, 506 N.E.2d 186 (1987). The Supreme Judicial Court denied further appellate review. *Commonwealth v. Mele*, 400 Mass. 1101, 508 N.E.2d 620 (1987). Mele then sought habeas relief in this Court.

On December 2, 1987, this Court denied Mele's petition on the merits. The First Circuit affirmed on the basis that Mele had failed to exhaust his state remedies. *Mele v. Fitchburg Dist. Court*, 850 F.2d 817, 824 (1st Cir.1988). This time around Mele asserts, and the Commonwealth does not dispute, that he has exhausted his state remedies through a Motion to Amend Application and File Late Said Amended Application filed in the Massachusetts Supreme Judicial Court. On June 29, 1988, the Supreme Judicial Court allowed Mele to file his amended application late, but denied it on the merits. Mele again repaired here.

---

1. The Gardner District Court is one of the local community courts in the Massachusetts District Court system.

2. Under Massachusetts appellate practice, a rescript opinion is but "a brief statement of the grounds and reasons of the decision." Mass. Gen.Laws ch. 211, sec. 8 (rescripts from the Massachusetts Supreme Judicial Court); Mass. Gen.Laws ch. 211A, sec. 9 (rescripts from the Massachusetts Appeals Court); *see also* Mass. Gen.Laws ch. 211, sec. 9 (stating that rescript opinions shall contain a brief statement of the reasons for the decision and, if no further opinion is written within 60 days, requiring that

such rescript opinions be published by the reporter). A rescript breaks no legal ground and only refers briefly to the governing precedent. Thus, when a Massachusetts trial justice is reversed by a rescript, he knows that he has run afoul of some already charted shoal. Even more stinging, of course, is to be summarily reversed without opinion. *See* Mass.Gen.Laws ch. 211A, sec. 9 (authorizing such disposition by the Massachusetts Appeals Court). In practice, the Massachusetts Appeals Court provides the unpublished opinions underlying such reversals to the trial justice and counsel in all such cases.

## II. DISCUSSION

██ This case turns on whether the Mele circumstances are closer to those of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) or *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). In *Pearce*, the Supreme Court held that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear [in the record]. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." 395 U.S. at 726, 89 S.Ct. at 2081. In *Colten*, the Supreme Court limited the potential reach of *Pearce*, ruling that resentencing after a *de novo* retrial as of right [3] did not pose the "possibility of vindictiveness [] found to exist in *Pearce*." 407 U.S. at 116, 92 S.Ct. at 1960. The Supreme Court therefore concluded that the second sentencing judge was free to impose a more severe sentence without following the procedure outlined in *Pearce*. *Id.* at 116–19, 92 S.Ct. at 1960–62.[4]

Turning to the instant case, here, as in *Pearce*, two different judges presided over the two trials.[5] As in *Colten*, the retrial took place in a *de novo* jury trial setting. This case, however, differs significantly from *Colten* in important respects. In the Kentucky court system, a defendant convicted after a trial or plea in an inferior court (in *Colten*, a Quarterly Court) could not seek appellate review. The only recourse available was the trial *de novo*. See *Colten*, 407 U.S. at 113, 92 S.Ct. at 1958. The second difference is that the trial *de novo* took place in an entirely different, superior court in Kentucky, *id.* at 112, 92 S.Ct. at 1958, not in the same court—albeit the jury-of-six session—as in Mele's case.

Moreover, the concerns of *Pearce* are fully applicable here. Just as the situation involving two separate judges of the Durham County Superior Court in North Carolina was thought to pose a danger of vindictive sentencing when one was overturned and a second presided over the retrial and sentenced Pearce, so too the same danger is posed here when the second trial judge, a justice in the Massachusetts District Court system, presided over the retrial and sentenced Mele, despite the fact that the retrial was at the customary *de novo* (i.e., jury-of-six) level.

The *Colten* rationale also suggests that *Pearce* is more applicable. The *Colten*

---

3. Under the Kentucky system at issue in *Colten*, any defendant convicted in a so-called inferior court—established for the trial of less serious offenses—had the right to a trial *de novo* in a court of general criminal jurisdiction. *Colten*, 407 U.S. at 112, 92 S.Ct. at 1958.

4. The First Circuit has recently addressed the issue of vindictive sentencing raised in *Pearce* and *Colten*. *United States v. Pimienta–Redondo*, 856 F.2d 351 (1st Cir.1988). In *Pimienta–Redondo*, after a jury convicted the two defendants on two counts, the defendant Pimienta–Redondo received consecutive sentences of five years on each of the two counts; the defendant Pupo received consecutive sentences of six years on each count. The First Circuit reversed the convictions on the first count due to a flawed jury instruction and remanded the case to the district court for resentencing of the defendants on the remaining count. On remand, the district court resentenced Pimienta–Redondo to ten years on the remaining count; Pupo received twelve years. The defendants then appealed, relying on *Pearce*. A divided panel declared that the standard under *Pearce* was a reasonable apprehension or fear of vindictiveness. *Pimienta–Redondo*, at 355, 356. The Court further

held that "*Pearce* directs us to adopt a presumption in favor of the defendants, not the sentencing judge," *id.* at 357, vacated the defendant's sentences, and remanded the case for reinstatement of the five and six year sentences originally imposed on each defendant for Count II. *Id.* at 357.

5. In *Pimienta–Redondo*, the First Circuit panel stated that "[i]n *Pearce*, the [Supreme] Court addressed due process concerns involved when a defendant, having obtained a reversal of a conviction on appeal, is subsequently retried, convicted for the same offense, and given an increased sentence *by the same trial judge*." *Pimienta–Redondo*, at 354 (emphasis supplied). In fact, in one of the two cases reviewed in *Pearce*, two different judges sentenced the defendant—the first after the initial trial and the second after the retrial following appeal. See *State v. Pearce*, 268 N.C. 707, 151 S.E.2d 571, 572 (1966). Thus, *Pearce* in no way turned on the fact that the same judge sentenced the defendant before and after the appeal. In *Pimienta–Redondo*, nothing turned on whether *Pearce* involved separate sentencing judges because in *Pimienta–Redondo* the same judge sentenced the defendants both times. See *supra* note 4.

Court, expressly distinguishing *Pearce,* observed first that, unlike here, "the court which conducted Colten's trial and imposed the final sentence was not the court with whose work Colten was sufficiently dissatisfied to seek a different result on appeal; and it is not the court that is asked to do over what it thought it had already done correctly." 407 U.S. at 116–17, 92 S.Ct. at 1960. Given this express reference to *Pearce,* the term "court" in the preceding passage appears to be synonymous not with judge, but rather with a level of court, or at least with all the members of a particular county superior court. The *Colten* Court further noted that the *de novo* court was not asked to find fault with the work of another court—and neither was the second trial judge in *Pearce*—but was merely asked to accord a new trial to the defendant, the same as to any defendant who waives the previous inferior court trial available to him. *Id.* at 117, 92 S.Ct. at 1960.

The *Colten* Court finally observed that a *de novo* court is more likely to reflect the Kentucky Court of Appeal's attitude that the inferior courts are not equipped to conduct error-free trials or to insure full constitutional rights, but rather are speedy and inexpensive courts of convenience to handle minor offenses. *Id.* [6] In Massachusetts, of course, the second trial justice

holds his commission in the same District Court system, exercises the same jurisdiction, attends the same court meetings, and receives the same continuing judicial educational opportunities as the first trial justice. Far from viewing the work of the first trial justice as somewhat slipshod, the second is likely to identify strongly with his colleague.[7] Although the *Colten* Court found no reason "to assume the *de novo* court will deal any more strictly with those who insist on a trial in the superior court after conviction" in the inferior court, *id.* at 117, 92 S.Ct. at 1960, a reading of *Pearce* and *Colten* together suggests that such optimism is unwarranted here.

The Commonwealth argues that *Colten* governs because the Massachusetts Appeals Court found that the second trial of Mele was a *de novo* proceeding. *Commonwealth v. Mele,* No. 86–1188, slip op. at 12 (Mass.App.Ct. April 2, 1987) [24 Mass. App.Ct. 1101, 506 N.E.2d 186 (Table) ]. Regardless of that court's characterization of the second proceeding, however, this Court is not bound, as the Commonwealth seems to think, to apply *Colten* mechanically to this case simply because the second proceeding has been deemed *de novo.* The policy concerns underlying *Colten* and *Pearce* dictate that the danger of vindictiveness, found dispositive in *Pearce,* exists with equal force here where a fellow mem-

---

**6.** Query whether motor vehicle homicide, of which Mele was convicted, can be considered a minor offense.

**7.** This Court takes judicial notice, Fed.R.Evid. 201, that each of the several Massachusetts trial courts possesses a distinctive and distinguished record of judicial service to the citizens of Massachusetts—a record of which the trial justices in each individual court are justly proud. *See Pierce v. Dew,* 626 F.Supp. 386, 387 (D.Mass. 1986). *See generally* "A Tribute to Hon. Kenneth L. Nash" [the First Chief Justice of the Massachusetts District Court system], 55 Mass.L. Q. 176–201 (1970); A. Dimond, The Superior Court of Massachusetts (1960); Agenda 90, Report of the Massachusetts Senate Ways and Means Committee 1–12 (1987) ("Agenda 90"). At the same time, each of the individual trial courts has had to wrestle with frequently decrepit court facilities and crippling shortages of judicial personnel, support services, and educational resources. Agenda 90 at Table A, 22–23; E. Hennessey, *Twelfth Annual Report to the*

*Bar,* 73 Mass.L.Rev. 8–9 (1988); "Courts in Crisis," Massachusetts Bar Association Judicial Administration Section Newsletter Special Issue (Spring 1988). One result of these disparate circumstances is the development of a high degree of intra-court collegiality and loyalty. This is particularly apparent in the Massachusetts District Court system where the vast number of cases it must handle necessitates central docketing within each district court, *see* Mass.Dist./Mun.Ct.Rule 79(a), and mandates that justices of the Massachusetts District Court system move from court to court within—and often beyond—their home county. Such trial justices must deal on a daily basis with the judicial decisions of their colleagues concerning prior proceedings in the cases before them. Such a system could not continue to function practically without a strongly developed doctrine of 'law of the case.' *See* H. Lummus, *The "Law of the Case" in Massachusetts,* 9 B.U.L.Rev. 225, 232–33 (1929); *see generally Lane v. First National Bank of Boston,* 687 F.Supp. 11, 13 (D.Mass.1988) (and the authorities cited therein).

ber of the same District Court system, serving in the same county, handled the retrial and resentencing.[8]

Applying *Pearce*, the record makes clear that the second trial justice gave Mele a more severe punishment, sentencing him to two and one-half years in a house of correction (increased from two years), and two and one-half years probation (also increased from two years), and requiring twenty days of the sentence to be served.[9] In thus increasing his sentence, however, the second trial justice failed to cite and rely upon "objective information concerning identifiable conduct on the part of the defendant occurring *after* the time of the original sentencing proceeding," *Pearce*, 395 U.S. at 726, 89 S.Ct. at 2081 (emphasis supplied), which is required for enhanced sentencing. The three-page Memorandum on Matter of Sentencing, though carefully and thoughtfully prepared by the second trial justice, contains no mention of evidence of Mele's conduct after the first trial and conviction. It appears that there was, however, evidence before the second trial justice that Mele had failed to perform properly some community service hours that were part of his first sentence.[10] This part of his sentence was eventually discharged by a payment of a $500 fine, presumably before the second trial began.[11]

■ *Pearce* requires that any post-conviction conduct that justifies a heavier sec-

ond sentence "be made part of the record" to ensure adequate appellate review. While arguably this may mean simply that some evidence of post-conviction misconduct warranting an enhanced sentence must be before the second trial justice at the sentencing hearing, this Court considers the better view to be that the policy underlying *Pearce* requires that it be included in a memorandum prepared by the judge so that a reviewing court may adequately assess the basis for the enhanced sanction.

Where, as here, there appears to have existed at the time of the second sentencing adequate post-conviction grounds for an enhanced sentence, but where, in circumstances such as these, the second trial justice failed to include any reference to post-conviction conduct in his memorandum, this Court orders that the writ of habeas corpus must issue and that the original sentence imposed be vacated unless the Massachusetts District Court sentences the petitioner within 60 days in accordance with the dictates of *Pearce* as outlined in this memorandum.[12]

8. It should be noted that, given that the Appeals Court reversed the first trial justice by a rescript opinion—in effect, suggesting that the judge erred on a well-settled point of law—the danger of vindictiveness was heightened here. It should further be noted that this Court makes no finding that the sentence imposed by the second trial justice was vindictive; rather, the Court holds that retrial in the same county and court system after reversal by a rescript opinion makes the need for the application of the rule of *Pearce* that much greater.

9. The sentence was reduced in the sense that Mele was not required to perform community service, although this provided small consolation as he had already discharged this portion of his previous sentence through the payment of a fine. *See infra* at 770.

10. Mele apparently was being counseled and treated for substance abuse. This Court does not find specific facts with respect to this point,

but simply observes that these facts sufficiently appear to be true from the entire record so that they could be taken into account by a sentencing judge.

11. It was also alleged at oral argument that Mele informed a probation officer during the probationary period after his first conviction that he intended to drive and to drive above the speed limit. This Court accepts this information as factual for the purposes of this decision. This information does not appear in the sentencing memorandum of the second trial justice.

12. This Court expresses no opinion as to which judge should resentence Mele except to note that Mele has recourse to the courts of the Commonwealth should he desire a resentencing judge other than either of the two justices who have already sentenced him. *See Lena v. Commonwealth*, 369 Mass. 571, 340 N.E.2d 884 (1976).